UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


PAUL BATISTE d/b/a ARTANG
PUBLISHING, LLC                                          CIVIL ACTION

V.                                                       NO. 17-4435

RYAN LEWIS, ET AL.                                       SECTION "F"


ORDER AND REASONS

Before the Court is the defendants' motion to exclude the report, opinions, and testimony of Archie K. Milton, a purported expert musicologist, from consideration on summary judgment or at trial. For the reasons that follow, the motion is GRANTED.

**Background**

A New Orleans jazz musician accuses an internationally famous hip-hop duo of copyright infringement of eleven original songs. This litigation followed.

Paul Batiste is a member of The Batiste Brothers Band, a New Orleans jazz band founded in 1976. Batiste also owns Artang Publishing, LLC. Between 1997 and 2002, Batiste composed several original songs, entitled Hip Jazz, Kids, Starlite Pt. 1, World of Blues, Love Horizon, Tone Palette, My Bad, Salsa 4 Elise (Fur Elise), Drowning in My Blues, Sportsman's Paradise, and Move That Body. Batiste has registered each song with the United States Copyright Office.

Ryan Lewis and Ben Haggerty form the hip-hop duo known as "Macklemore and Ryan Lewis." The duo has achieved international stardom and is best known for the singles "Thrift Shop" and "Can't Hold Us," which were the most popular songs in the United States and Australia after their releases in 2012 and 2016.[1] The duo also received several Grammy awards, including those for best new artist, best album, and best rap performance.

On May 1, 2017, Batiste[2] sued Ryan Lewis and Ben Haggerty, alleging they infringed on his copyrights by using unauthorized samples and by copying elements of eleven of his original songs in the composition of their songs Thrift Shop, Can't Hold Us, Need to Know, Same Love, and Neon Cathedral. Batiste also sued Andrew Joslyn and Allen Stone, who are credited with writing the hip-hop songs, as well as the publishing companies who own rights to the compositions, including Macklemore Publishing, Ryan Lewis Publishing, DB Joslyn Music, and Sticky Stones, LLC.

The defendants moved to dismiss the complaint on September 11, 2017, but ultimately withdrew that motion after the plaintiff filed an amended complaint. The defendants then moved to dismiss the amended complaint on November 15, 2017, but again voluntarily dismissed it after the plaintiff was granted leave to file a second

---

[1] "Thrift Shop" has garnered 1.1 billion views on YouTube.
[2] The complaint styles the plaintiff as Paul Batiste, doing business as Artang Publishing, LLC.

amended complaint on January 19, 2018.  Thereafter, on February 20, 2018, the defendants moved to dismiss the second amended complaint.  In its Order and Reasons dated May 17, 2018, this Court denied the defendants' motion to dismiss, holding that the plaintiff's complaint plausibly alleges the three requirements to a successful claim of copyright infringement: (1) a valid copyright; (2) factual copying (through allegations of striking similarity); and (3) substantial similarity.

Six months later, on November 25, 2018, Batiste disclosed a 68-page report signed by Archie K. Milton, an alleged expert musicologist, in an effort to buttress his copyright infringement claims.  The report purports to analyze elements of "copying" and "digital sampling" and to demonstrate similarities between the defendants' and the plaintiff's musical works through the use of various computer software programs.[3]  Contending that the report was ghost-written by the plaintiff, the defendants now seek to exclude Milton's report, opinions, and testimony from consideration on summary judgment or at trial, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence.

---

[3] Specifically, the report provides that it was prepared using the following programs: Celemony Melodyne, Ableton Live, Blue Cat Oscilloscope, Sonic Visualization, Sony Spectralayers, Spectrograms, and Finale.

## I.

### A.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires the disclosure of an expert witness's identity to be accompanied by a "written report – prepared and signed by the witness" that contains:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Rule 37(c), in turn, vests the Court with authority to exclude expert testimony for violations of Rule 26(a), "unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1); see Honey-Love v. United States, 664 F. App'x 358, 362 (5th Cir. 2016) (per curiam) (emphasizing that, "under Rule 37(c), the presumptive sanction for failing to disclose a testifying expert or supply a required expert report . . . is to exclude or limit the expert's testimony").

### B.

Federal Rule of Evidence 702 provides for the admission of expert testimony that will assist the trier of fact to understand

4

the evidence or to determine a fact in issue. Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), district courts are tasked with making a preliminary assessment as to the reliability and relevance of proffered expert testimony. In fulfilling this "gatekeeping" function, the trial court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and [] whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

II.

*A.*

While not directly addressed by the Fifth Circuit, courts within this circuit have recognized that a ghost-written expert report fails to comply with the disclosure requirements of Rule 26 and calls into question the reliability of the proposed testimony. See United States ex rel. Wall v. Vista Hospice Care, 319 F.R.D. 498 (N.D. Tex. 2016); Seahorn Invs., LLC v. Fed. Ins. Co., No. 1:13CV320, 2015 U.S. Dist. LEXIS 120662 (S.D. Miss. Sep. 10, 2015); O'Hara v. Travelers, No. 2:11-CV-208, 2012 U.S. Dist. LEXIS 104048 (S.D. Miss. July 26, 2012); Transcon. Gas Pipeline Corp. v. Societe d'Exploitation du Solitaire, S.A., No. 05-1295, 2007 U.S. Dist. LEXIS 67691 (E.D. La. Sep. 11, 2007) (Berrigan, J.); DirecTV, Inc. v. Henley, No. 04-CA-83-OG, 2005 U.S. Dist. LEXIS 46847 (W.D. Tex. Jan. 31, 2005).

"To prove ghostwriting, the party seeking exclusion must use the available documents to show that the non-moving party provided the substance of the opinions of the testifying expert[], not just editorial assistance." Transcon. Gas Pipeline Corp., 2007 U.S. Dist. LEXIS 67691, at *10-11 (citations and alterations omitted); see also United States ex rel. Wall, 319 F.R.D. at 510; Seahorn Invs., 2015 U.S. Dist. LEXIS 120662, at *26. In other words, although an expert may receive some assistance in preparing his or her report, the expert must "substantially participate[] in the preparation." Tech Pharm. Servs., LLC v. Aliza Rx LLC, No. 4:15-CV-766, 2017 U.S. Dist. LEXIS 122231, at *7-8 (E.D. Tex. Aug. 3, 2017) (internal citations omitted).

For example, in O'Hara v. Travelers, the U.S. District Court for the Southern District of Mississippi excluded expert reports where the purported expert "testified that he did not prepare or assist in the preparation of the expert reports disclosed by the Plaintiff" and that he "merely signed them at the Plaintiff's request." No. 2:11-CV-208, 2012 U.S. Dist. LEXIS 104048, at *23-24 (S.D. Miss. July 26, 2012). The O'Hara court reasoned that such ghost-writing "conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report" and "taints the proposed expert testimony to a degree that its reliability may be questioned." Id.

Similarly, in <u>Seahorn Investments, LLC v. Federal Insurance Company</u>, the Southern District of Mississippi excluded proffered expert testimony where a ghost writer had "provided the actual substantive content and engineering calculations central to the conclusions" in the expert's report. <u>Seahorn Invs., LLC</u>, 2015 U.S. Dist. LEXIS 120662, at *27. Finding that "it was actually . . . the disclosed expert[] who provided editorial assistance to . . . the undisclosed structural engineer, who prepared and wrote the Original Report," the <u>Seahorn</u> court held that the report did not conform to the disclosure requirements of Rule 26(a). <u>Id.</u> at *27-28; <u>Cf.</u> <u>Zoch v. Daimler, A.G.</u>, No. 4:17-CV-578, 2018 U.S. Dist. LEXIS 164500, at *22 (E.D. Tex. Sept. 25, 2018) (declining to exclude expert testimony where the expert "testified that the report accurately reflect[ed] his opinion," and the evidence revealed that the expert "took notes, generated the formulation and written concepts of his opinion, and discussed his opinion with the attorney who drafted the report").

*B.*

The defendants move to exclude the report and proffered testimony of Archie K. Milton on the ground that the report was ghost-written by the plaintiff. Mr. Batiste concedes that he "collaborated" with Milton to produce the report but insists that he did not write the report for his expert witness. Accordingly, at issue in this case is whether Mr. Milton "was sufficiently

7

involved in the drafting of his expert report such that it was 'prepared and signed by the witness' as required by Rule 26." See Zoch, 2018 U.S. Dist. LEXIS 164500, at *20.

During his deposition, Mr. Milton testified that he and Batiste "collaborated" on the analysis contained in the report:

> **Q.** Okay. And are all the words, were all of those words typed by you?
> **A.** Some were, yeah.
>
> **Q.** And the ones that --
> **A.** We -- corroborated.
>
> **Q.** You mean collaborated?
> **A.** Collaborated.

However, when questioned about the extent of such collaboration and what portions, if any, of the report he had created, Milton was unable to take credit for any part of the analysis:

> **Q.** As you sit here today, can you identify portions of [the report] that were originally drafted by you as opposed to Mr. Batiste? Or do you recall?
> **A.** Now, that's a hard one.
> . . .
>
> **Q.** So fair to say that claim 1 [on pp. 6-8] was the product of Mr. Batiste's analysis, not yours; correct?
> **A.** Yeah.
> . . .
>
> **Q.** At the bottom of page 6 there's also a reference to Spectralayers. This is also analysis done by Mr. Batiste, not you; right?
> **A.** Correct.
> . . .
>
> **Q.** The language on page 16, that was written by Mr. Batiste, not you; correct?
> **A.** That's not my wording.

> **Q.** And the visual analysis, the wave, whatever that is, that's not yours either; right?
> **A.** Correct.
>
> **Q.** Skip ahead to page 19. The image that takes up about three-quarters of the page looks like it shows three different waves; this is not work you did; right?
> **A.** Right.
>     . . .
>
> **Q.** Page 21, that's all Mr. Batiste's transcription and wave; it's nothing you did; right?
> **A.** Correct.
>     . . .
>
> **Q.** So you have now had the opportunity to go through page 23 of your report to the end. My question is, are any of the transcriptions contained in the balance of the report, were they created by you?
> **A.** No. They were good.
>
> **Q.** They're created by Mr. Batiste, though, not you?
> **A.** Yeah.
>
> **Q.** And the wave analyses that are contained in various forms, those were all done by Mr. Batiste, too; correct?
> **A.** Correct.
>     . . .
>
> **Q.** And so none of this analysis was original or independently created by you; correct?
> **A.** Correct.

In addition to testifying that he did not independently create the analyses, Mr. Milton conceded that he lacks access to the computer programs used to generate the comparisons set forth in the report. Relatedly, he admitted that he could not verify the accuracy of Batiste's work:

> **Q.** It says "The analysis in this document was made using" and it identifies those programs. And so I am just trying to understand what analysis you did, if any, and what analysis Mr. Batiste did.

9

**A.** I don't have those programs.

. . .

**Q.** Okay. And because you don't have the programs, you couldn't do anything to independently verify whether this is accurate; right?
**A.** Correct. Now, when I got these, I also got an audio.

Here, like the experts in O'Hara and Seahorn, Milton testified that none of the analysis contained in the 68-page report was the product of his original work and that it was all created by Batiste. O'Hara, 2012 U.S. Dist. LEXIS 104048, at *23-26; Seahorn Invs., LLC, 2015 U.S. Dist. LEXIS 120662, at *25-33. Although Milton stated that he and Batiste "collaborated" on the report, he was unable to identify any portions that were drafted by him.[4] And because the report substantively sets forth analyses generated by computer programs to which Milton does not have access, Mr. Milton also denied an ability to verify the accuracy of Batiste's work.

In light of the above testimony, the Court is left to conclude that Mr. Batiste "provided the actual substantive content and [musical transcriptions] central to the conclusions in the [report]" and that Mr. Milton provided mere "editorial assistance." Seahorn Invs., LLC, 2015 U.S. Dist. LEXIS 120662, at *27. Because Mr. Batiste's involvement in the preparation of Milton's report exceeds the permissible bounds of "editorial

---

[4] Batiste maintains in his opposition papers that he and Milton "collaborated" on the report, contending that Milton analyzed the report and rendered his own opinions. But Batiste points to no evidence of record to support that contention.

assistance," Milton's report (and proffered testimony) must be excluded under Rule 37(c)(1) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 702.  See id. at *26-27.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendants' motion to exclude the expert witness report and testimony of Archie K. Milton is hereby GRANTED.

					New Orleans, Louisiana, April 10, 2019

					_____
					MARTIN L. C. FELDMAN
					UNITED STATES DISTRICT JUDGE