UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAUL BATISTE d/b/a ARTANG PUBLISHING, LLC, a Louisiana Limited Liability Company | CIVIL ACTION |
| VERSUS | NO: 17-4435 |
| RYAN LEWIS, BEN HAGGERTY, Professionally known as MACKLEMORE, Professionally and collectively known as MACKLEMORE AND RYAN LEWIS, Individuals, MACKLEMORE PUBLISHING, RYAN LEWIS PUBLISH, MACKLEMORE, LLC ALTERNATIVE DISTRIBUTION ALLIANCE, ANDREW JOSLYN, ALLEN STONE, ANDREW JOSLYN MUSIC, LLC, STICKY STONES PUBLISHING | SECTION: "F" (4) |

**REPORT AND RECOMMENDATION**

Before the Court is Defendants' **Motion for Attorneys' Fees (R. Doc. 145)**. The issue of attorneys' fees and costs was referred to the undersigned, to submit proposed findings and recommendations for disposition pursuant to Title 28 U.S.C. §§ 636(b)(1)(B) and (C), 1915e (2), and 1915A, and as applicable, Title 42 U.S.C. §§ 1997e (c)(1) and (2). *See* R. Doc. 146. The motion is opposed. R. Doc. 149. The motion was heard on the briefs.[1]

I.  **Factual Summary**

This copyright infringement case was filed by Paul Batiste ("Batiste") , a New Orleans jazz musician who is the founding member and owner of Artang Publishing, LLC and the Batiste Brothers Band. *Id.* at p. 2. Defendants Ryan Lewis and Ben Haggerty are a famous hip-hop duo known as

---

[1] Although Plaintiff appealed the final judgment on May 20, 2019, (*See* Rec. Doc. 147), the Fifth Circuit has held that the District Court retains jurisdiction to consider a motion for attorneys' fees to a prevailing party under 17 U.S.C. § 505 after the filing of a notice of appeal. *Unlimited, Inc. v. McCain,* 112 F.3d 814, 817 (5th Cir. 1997).

MACKLEMORE AND RYAN LEWIS, who have achieved international success for their singles *Thrift Shop* and *Can't Hold Us*. *Id.* Defendants have also received several Grammy awards, including those for best new artist, best album, and best rap performance, for their single *Thrift Shop*. *Id.*

Plaintiff alleged that Defendants willfully infringed on his copyrights by using unauthorized samples and copying elements of eleven of Plaintiff's original songs in the composition of *Thrift Shop*, *Can't Hold Us*, *Need to Know*, *Same Love*, and *Neon Cathedral*. *Id.* Plaintiff also sued several others credited with writing the songs, as well as the publishing companies who own the rights to the compositions. *Id.* Plaintiff alleged, *inter alia*, that he was entitled to actual damages and Defendants' profits in connection with the infringed copy-righted songs. R. Doc. 40 at p. 13-22.

After dealing with contentious discovery, Defendants filed a Motion for Summary Judgment (R. Doc. 140), which the District Judge subsequently granted in its entirety. Specifically, the Court found that there was no evidence to suggest that Defendants had factually copied any of Batiste's musical compositions or sound recordings. R. Doc. 140. The Court further held, in comparing the songs with recordings, that Plaintiff failed to demonstrate "striking similarity" or any instance of sampling with respect to the twelve song pairings identified in his complaint. As such, the Second Amended Complaint was dismissed with prejudice. R. Doc. 144.

Defendants now seek fees and expenses they incurred and submit that such relief is warranted because Plaintiff's claims were objectively baseless and unreasonable from the outset; both Plaintiff and his counsel engaged in egregious misconduct including, among other things, Plaintiff failed to provide even the most basic responses to Defendants' requests for discovery, despite an Order from the undersigned; Plaintiff failed to comply with an Order directing payment of Defendants' attorneys' fees for discovery misconduct; Plaintiff failed to personally appear for depositions that Plaintiff's

2

counsel noticed in Seattle, Washington; and as Plaintiff submitted a fraudulent "expert report" prepared in its entirety by Batiste. Defendants contend that, as a prevailing party in this Copyright Act case, the Court has the discretion to award them attorneys' fees and costs pursuant to 28 U.S.C. § 1927, and therefore seek an award of $145,594.50 and $3,764.26 in reasonable attorneys' fees and costs, as well as seeking an estimated $5,000.00 to $10,000.00 in additional attorneys' fees and costs associated with this motion and reply. R. Doc. 145-1.

Plaintiff opposes the motion contending that the award of attorneys' fees is not automatic, but rather that it is subject to the Court's discretion. R. Doc. 148. Plaintiff contends that Defendants' request for attorneys' fees is "severely misplaced" and constitutes a collection of mischaracterizations and baseless claims. *Id.* Plaintiff further contends that while the Court dismissed his claim, there is no evidence to suggest that the claim was frivolous or brought in bad faith. *Id.* Albeit Plaintiff acknowledges that there currently is no case in the Fifth Circuit that addresses the burden of proof required to demonstrate "substantial similarity" in a sound recording sampling case and copying claim. *Id.*

In setting forth the respective position of the parties, the Court proceeds with its review of the matter. This Court, in exercising its discretion to award attorneys' fees, is of the opinion that Defendants' award of attorneys' fees and costs associated are appropriate in this Copyright infringement case for the reasons set forth in greater detail below.

## II. Standard of Review

The criteria to be applied in determining the proper amount of fees to be awarded in the Fifth Circuit is articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The Court notes that the Fifth Circuit has applied the *Johnson* factors to copyright infringement cases in

3

previous instances. *See*, *e.g.*, *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985) (citing *Engel v. Teleprompter* Corp., 732 F.2d 1238, 1241 (5th Cir. 1984)).

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. The lodestar is presumed to yield a reasonable fee. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). After determining the lodestar, the Court must then consider the applicability and weight of the twelve factors set forth in *Johnson*, 488 F.2d at 717-19.[2] The Court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). However, the lodestar should be modified only in exceptional cases. *Id.*

After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

### III. Analysis

#### A. Prevailing Party

There is no dispute as to whether Defendants are the prevailing parties. The sole item of issue

---

[2] The twelve *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

regarding Defendants' entitlement to the award of reasonable attorneys' fees, at least according to Plaintiff, is that there is no proof that his claim was frivolous and objectively unreasonable.

"Underpinning any award of attorneys' fees is 'the goal of vindicating the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good.'" *See Lotus Dev. Corp. v. Borland Int'l, Inc*., 140 F.3d 70, 73 (1st Cir.1998). Plaintiffs' argument as to Defendants' not meeting their threshold burden showing as to attorneys' fees in a Copyright Act case falls flat where, as in here, a "showing of frivolity or bad faith is not required; rather, the prevailing party need only show that its opponent's copyright claims or defenses were 'objectively weak.'" *Latin Am. Music Co. v. Am. Soc'y of Composers Authors & Publishers*, 629 F.3d 262, 263 (1st Cir.2010) (quoting *Garcia–Goyco v. Law Envtl. Consultants, Inc*., 428 F.3d 14, 20 (1st Cir.2005)).

In considering the objective weakness in Plaintiff's claims, the Court finds the following procedural history instructive. The series of Plaintiff mishaps and failures in this case initially began with Defendants' filing of a motion to dismiss, which Plaintiff responded to by filing a motion to amend his complaint. R. Docs. 12 & 19. The Defendants reasserted their arguments from their motion to dismiss, and Plaintiff moved for leave to file its Second Amended Complaint, which the undersigned Magistrate Judge ultimately granted. R. Docs. 25, 34, & 39. At some point thereafter, District Judge Martin L. C. Feldman denied Defendants' subsequently filed Second Motion to Dismiss Second Amended Complaint. R. Doc. 58.[3]

Parties hotly contested discovery matters in this case, but in every dispute Plaintiff's position did not yield success. *See, e.g.,* R. Doc. 89. The Court even had to award reasonable attorneys' fees

---

3 The Court, here notes, that Plaintiff eventually filed for leave to file its Third Amended Complaint (R. Doc. 110), which the Court did not rule on as the Second Amended Complaint was dismissed with prejudice.

5

to Defendants on their Motion to Compel (R. Doc. 81) because Plaintiff lacked a good faith basis for his refusal to produce required documents. R. Docs. 129 & 145-1, p. 5. The award was $3,554.00, which remains unpaid by either counsel or his client. *Id.*

The Court held a discovery conference to address Plaintiff's request to suspend and cancel the deposition of its expert. R. Doc. 97. After consideration of the issue, the Court denied Plaintiff's request and ordered Mr. Archie Milton, Plaintiff's expert, to answer questions regarding Plaintiff's personal contributions to the preparation of his own proffered expert report. *Id.* Mr. Milton's testimony revealed that the expert report was in fact largely prepared by Plaintiff himself and not the expert as previously represented by Plaintiff and his counsel. *Id.*[4]

As a result of this testimony, Defendants filed a motion to exclude Plaintiff's expert's deposition, which District Judge Feldman subsequently granted. R. Doc. 125. Interestingly, and perhaps most daringly, Plaintiff decided to take the contents of Mr. Milton's report, as they were substantially prepared by him, and attempted to submit it in his own name. *See* R. Doc. 135-5. A few weeks later, on April 29, 2019, the Court dismissed Plaintiff's lawsuit by granting a summary judgment noting that Plaintiff's copyright infringement claim presented no probative evidence to demonstrate that Defendants factually copied any of the music compositions or sound as a matter of law. R. Doc. 144. These case docket filings, hearings, and orders demonstrate the frivolity in Plaintiff's allegations, and, as such, this Court finds that the Batiste's claims are, and continue to be, objectively weak. Accordingly, it is recommended that an award of attorneys' fees is appropriate.

**B. Attorneys' Fees**

Defendants seek to recover attorneys' fees for Mary Ellen Roy ("Roy"), Barry Slotnick

---

4 As the full amount of this award of attorneys' fees remains unpaid, the Court will not need to deduct this amount, and corresponding attorney time, from its ultimate award calculation.

("Slotnick"), Dan Zimmerman ("Zimmerman"), and Ashley Heilprin ("Heilprin") of Phelps Dunbar as a result of work performed on the matter. The rates billed to the client range from $245.00 to $375.00. Plaintiff does not contest the reasonableness of the rates. Defendants also seek to recover the fees associated with four paralegals and a legal secretary. Paralegal 1—Lornalin Rose spent 1.0 hour at a rate of $180.00; Paralegal 2—Sally Warner spent 1.5 hours at a rate of $140.00; Paralegal 3—Ashley J. Errington spent 1.3 hours at a rate of $130.00; and Paralegal 4—Angela Robinson spent 3.75 hours at a rate of $80.00. R. Doc. 145-2, p. 6. Finally, Roy seeks a fee award for Legal Secretary Ms. Donna M. Gentile billed for 2.0 hours at a rate of $60.00. *Id.* at p. 5. The total amount sought for the four paralegals' and the legal secretary's time is 9.55 hours and equates to $979.00 billed. However, the Court was not provided any background or educational information for the legal staff and as analysis is not necessary as such the Court will disallow the fees requested of $979.00 for the paralegals and legal secretary work.

### 1. *Reasonableness of the Hourly Rate*

Attorneys' fees must be calculated at the "prevailing market rates in the relevant community" for similar services by attorneys of reasonably comparable skills, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir. 1987). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896, n.11. However, mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate. *See Hensley*, 461 U.S. at 439 n.15.

Rates may be adduced through direct or opinion evidence as to what local attorneys charge

under similar circumstances. The weight to be given to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also White v. Imperial Adjustment Corp.*, No. 99-03804, 2005 WL 1578810, at *8 (E.D. La. Jun. 28, 2005) (recognizing that attorneys customarily charge their highest rates only for trial work, and lower rates should be charged for routine work requiring less extraordinary skill and experience).

First, the Court considers attorney Mary Ellen Roy, partner with Phelps Dunbar LLP and counsel for Defendants, affidavit. R. Doc. 145-2. Ms. Roy states that she is a graduate of Harvard Law School and member of the Louisiana Bar since October of 1984. *Id.* at p. 3. She further indicates that she is also Chair of the Louisiana State Bar Association Intellectual Property Law Section. *Id.* She further indicates that her effective billing rate was $355.00. *Id.* at p. 4.

Ms. Roy also includes in her affidavit a declaration to provide information on Dan Zimmerman. Zimmerman is a staff attorney at Phelps Dunbar LLP and 1983 *cum laude* graduate of Tulane University School of Law, licensed to practice law in Louisiana since 1983, and who practices at Phelps Dunbar LLP where his hourly effective billing rate is $276.66. *Id.* at p. 5. Ms. Roy also includes in her affidavit a declaration to provide information on Ashley Heilprin, an associate in the litigation section of the firm. *Id.* Heilprin is a 2013 graduate of William & Mary Law School who has been licensed to practice law in the State of Louisiana since 2013. *Id.* Ms. Roy indicates Heilprin is billed at an average effective hourly rate of $245.00. *Id.*

Christian D. Carbone, partner at Loeb & Loeb LLP, submitted a separate affidavit on behalf of Barry Slotnick. R. Doc. 145-5. Mr. Slotnick is partner and chair of the Intellectual Property and

Entertainment Litigation Practice Group in Loeb & Loeb LLP's New York City office. *Id.* at p. 3. Mr. Slotnick is at graduate of Syracuse University College of Law and has been licensed to practice law in the State of New York since 1972. *Id.* Mr. Slotnick is a nationally recognized copyright litigator with more than forty years of experience. *Id.* Carbone also attached Mr. Slotnick's biography and other material reflective of his credentials. R. Doc. 145-6. Mr. Slotnick seeks a billing rate of $375.00, which he contends is the range appropriate for a highly experienced partner handling complex litigation serving as lead counsel. R. Doc. 145-5, p. 4.

Where an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable." *La. Power & Light*, 50 F.3d at 328. Satisfactory evidence of the reasonableness of the rate, at a minimum, is more than the affidavit of the attorney performing the work. *Norman*, 836 F.2d at 1299 (citing *Blum,* 465 U.S. at 896 n .11)). It must also speak to rates billed and paid in similar lawsuits. *Id.* Thus, mere testimony that a given fee is reasonable is not satisfactory evidence of market rates. *See Hensley,* 461 U.S. at 439 n. 15. The Court finds the rates of the billing attorneys are deemed reasonable as the rates are not contested by Plaintiff.

### 2. *Determining the Reasonable Hours Expended*

As previously discussed in the rates section, Defendants seek fees associated with the four attorneys who worked on this file as well as Phelps Dunbar LLP's legal secretary and paralegals. The total hours billed is 458.75[5] for the three Phelps Dunbar LLP attorneys and Mr. Slotnick of Loeb & Loeb LLP rendering total fees sought by Defendants in the amount of $145,594.50.

---

5 This number is calculated by adding the 435.45 billed hours of Phelps Dunbar LLP (R. Doc. 145-3, p. 29) with the 23.3 billed hours sought by co-counsel Loeb & Loeb LLP.

The billing entries show that the attorneys served different roles during the litigation. Roy states that she served as lead local counsel on this matter, which consisted of formulating case strategy reviewing, editing and commenting on briefs and other written court submissions drafted by Loeb & Loeb attorneys; and attending court hearings, discovery conferences, settlement discussions and depositions. R. Doc. 145-2, "Affidavit of Roy." She states that from August 2, 2017 to April 29, 2019, she billed $76,270.50 in total fees. *Id.* at p. 4. Ms. Roy attests that Zimmerman's time on the matter was primarily spent reviewing and revising briefs and other written court submissions drafted by Loeb & Loeb LLP attorneys to conform to local practices and requirements. *Id.* She also attests that Zimmerman prepared motion papers, proposed Orders, and other written submissions; worked with co-counsel and firm legal staff on discovery matters; and attended court hearings. *Id.* From August 2, 2017 to April 29, 2019, he billed 182.7 hours with fees totaling $51,448.50. *Id.* at p. 5. Ms. Roy finally attests that Ms. Heilprin spent time researching and communicating with local musicologist experts, reviewing Defendants' expert reports, and conducting legal research. *Id.* From August 2, 2017 to April 29, 2019, she billed 33.3 hours with fees totaling $8,158.50. *Id.* The total in attorneys' fees sought for the three Phelps Dunbar LLP attorneys is $136,856.50. Defendants finally seek 23.3 hours for attorney Barry Slotnick's contributions. R. Doc. 145-5, p. 4. The total amount sought for his work is $8,738.00. *Id.*[6]

Duplicate billing under a fee-shifting statute is not *per se* unreasonable if the award for time spent by two or more attorneys "reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Thomas v. Frederick*, No. 87-1950, 1992 WL 17273, *1 (W.D. La. Jan. 29, 1992) (citing *Johnson v. University of University of Alabama*, 706 F.2d

---

6 Here, the Court notes that Defendants' (rate x hour) calculation is incorrect by $0.50.

1205, 1208 (11th Cir. 1983)). The District Court has considerable discretion in this area because of its familiarity with the case and the attorneys' work. *See Associated Builders & Contractors, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 379 (5th Cir. 1990); *Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985). A central factor in evaluating the necessity of multiple attorneys at court hearings or trials is the degree to which each attorney participated in or contributed to the proceedings. *West Virginia University Hosp., Inc. v. Casey*, 898 F.2d 357, 365 (3rd Cir. 1990).

The party seeking attorneys' fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of billing judgment. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). Attorneys must exercise "billing judgment" by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards. *Walker v. United States Dep't of Housing & Urban Dev.,* 99 F.3d 761, 769 (5th Cir.1996). Specifically, the party seeking the award must show all hours expended on the case but not included in the fee request. *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987). Hours that are not billed properly to one's client also are not properly billed to one's adversary. *Hensley*, 461 U.S. at 434.

The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended. *Id.* Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642 (5th Cir. 2002). The Court has reviewed the contemporaneous billing sheets and finds, while generally the Defendants exercised care in billing judgement (*See, e.g.*, R. Doc. 145-5, p. 2 ¶ 7), that the following entries are unreasonable as either block billed or duplicative.

11

### *i. Block Billing*

At the outset, the Court notes that counsel for Defendant's engaged in block billing. "Block billing" can be defined as the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *Robinson v. City of Edmond*, 160 F.3d 1275, 1283, n. 9 (10th Cir.1998); *Harold Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir.1996). *See also*, *Institute for Wildlife Protection v. Norton*, No. C03–1251P, 2006 WL 1896730, at *2 (W.D.Wash. July 10, 2006); *Defenbaugh v. JBC & Assocs., Inc.*, No. C–03–0651 JCS, 2004 WL1874978 (N.D.Cal. Aug. 10, 2004). While block billing creates impediments to the analysis of the attorneys' fee bill, the Supreme Court has indicated that it is not a basis for refusing to award attorneys' fees. *Trulock v. Hotel Victorville,* 92 Fed. Appx. 433, 434 (9th Cir.2004).

A review of case law reflects that the method most often used to compensate for block billing is a flat reduction of a specific percentage from the award. *See*, *e.g.*, *Delgado v. Village of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *7 (N.D.Ill. Oct.31, 2006) (reduction of total fees by 35% for vagueness, block billing and lack of detail); *Phoenix Four, Inc., v. Strategic Resources Corporation*, No. 05 Civ. 4837(HB), 2006 WL 2135798, at *2 (S.D.N.Y. Aug.1, 2006) (fee award reduced by 25% for block billing); *Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt,* No. 04 Civ. 3600(SWK), 2005 WL 3099592, at *7 (S.D.N.Y. Nov.17, 2005); (reduction of award by 25% for block billing, excessive hours, and vagueness in time entries); *Sea Spray Holdings, Ltd. v. Pali Fin. Group Inc.*, 277 F.Supp.2d 323, 326 (S.D.N.Y.2003) ("because of . . . the inherent difficulties the court would encounter in attempting to parse out reasonable hours and manpower for appropriate tasks, the court finds that a 15% "flat reduction of fees . . . is warranted.");

*see also*, *Creecy v. Metropolitan Prop. & Cas. Ins. C*o., 548 F.Supp.2d 279 (E.D.La.2008) (Roby, J). In consideration of these holdings, the Court will therefore reduce each block billed entry by 25%.

Roy had block billed entries totaling 133.60 hours[7] with a 25% reduction of 33.40 hours to equal 100.20 allowable hours. Zimmerman had block billed entries totaling 76.6 hours[8] with a 25% reduction of 19.15 hours to equal 57.45 allowable hours. Heilprin had block billed entries totaling 8.10 hours[9] with a 25% reduction of 2.03 hours to equal 6.07 allowable hours. Slotnick had a block billed entry totaling 6.3 hours[10] with a 25% reduction of 1.58 hours to equal 4.72 allowable hours.

### ii. Duplicate Entries

On October 4, 2017 and October 5, 2017, Ms. Roy billed for studying and reviewing correspondence regarding the dismissal of the ADA Defendant and billed 0.1 for each. She also made an identical time entry on October 10, 2017, for the same exact work at 0.1 hours. R. Doc. 145-3. Accordingly, the Court will accept one entry and not the others, reducing Roy's time a further 0.2 hours.

---

[7] 9/11/17-(0.6 hrs.), 9/13/17-(.1), 12/12/17-(0.2 hrs.), 12/15/17-(0.4 hrs.), 1/18/18-(0.2hrs), 1/24/18–(0.3hrs), 2/21/18-(1.10 hrs.), 5/31/18-(0.4 hrs.), 7/26/18- (0.4hrs), 7/30/18-(1.1 hrs.), 8/8/18-(2.6 hrs.), 8//10/18–(4.0hrs), 8/13/18-(0.5hrs), 8/18/18-(0.5hrs), 8/22/18-(1.5 hrs.), 8/24/18-(0.6hrs), 8/30/18-(0.6hrs),10/8/18-(0.2hrs), 11/9/18-(0.4hrs), 11/12/18-(1.4 hrs.), 11/14/18-(1.7 hrs.), 11/15/18-(3.6 hrs.), 11/21/18-(1.5 hrs.), 11/26/18-(1.6 hrs.), 11/27/18-(0.6 hrs.), 11/28/18-(1.3 hrs.), 11/29/18-(0.9hrs), 12/2/18-(0.4hrs), 12/3/18-(1.8 hrs.), 12/7/18-(2.2 hrs.), 12/11/18-(0.4hrs), 1/18/19-(3.5 hrs.), 1/20/18-(4.0 hrs.), 1/21/18-(2.5 hrs.), 1/23/19-(1.8 hrs.), 1/24/19-(3.5 hrs.), 2/5/19-(1.1 hrs.), 2/6/18-(1.0hrs), 3/28/19-(1.7 hrs.), 2/8/19-(3.0 hrs.), 2/11/19-(4.7 hrs.), 2/12/19-(1.3 hrs.), 2/13/19-(1.9 hrs.), 2/14/19-(1.8 hrs.), 2/15/19-(2.0 hrs.), 2/16/19-(0.6hrs), 2/19/19-(6.5 hrs.), 2/20/19-(1.8 hrs.), 2/21/19-(6.7 hrs.), 2/22/19-(7.5 hrs.), 2/25/19-(0.7 hrs.), 2/26/19-(1.3 hrs.), 2/27/19-(1.2 hrs.), 3/4/19-(1.5 hrs.), 3/23/19-(3.7 hrs.), 3/24/19-(6.4 hrs.), 3/25/19-(3.6 hrs.), 3/26/19-(2.1 hrs.), 3/27/19-(2.2 hrs.), 3/28/19-(2.5 hrs.), 3/29/19-(1.9 hrs.), 4/319-(2.0 hrs.), 4/5/19-(2.9 hrs.), 4/8/19-(1.9 hrs.), 4/10/19-(1.2 hrs.), 4/15/19-(1.5 hrs.), 4/16/19-(1.2 hrs.), 4/17/2019-(1.0 hrs.), 4/18/19-(2.5 hrs.), 4/24/19 (1.3 hrs.), and 4/25/19-(1.0 hrs.). *See* R. Doc. 145-3.

[8] 9/08/17-(5.7 hrs.), 09/11/17-(5.0 hrs.), 10/3/17-(1.4 hrs.), 11/13/17-(1.2 hrs.), 11/15/2017-(1.8 hrs.), 1/22/18-(0.8hrs), 2/20/18-(7.8 hrs.), 11/26/18-1.2 hrs.), 11/28/18-(1.9 hrs.), 11/29/18-(5.2 hrs.), 12/3/18-(0.9 hrs.), 12/6/18-(0.9 hrs.), 12/7/18-(2.5hrs), 1/19/18-(4.2 hrs.), 1/21/19-(4.5 hrs.), 1/23/19-(3.1 hrs.), 2/12/19-(0.9 hrs.), 2/15/19-(3.8 hrs.),2/16/19-(2.2hrs), 2/21/19-(6 hrs.), 2/22/19-(4.6 hrs.), 2/26/19-(0.9 hrs.), 2/27/19-(0.9 hrs.), 3/27/19-(1.6 hrs.), 4/5/19-(3.5 hrs.), and 4/8/19-(4.1 hrs.). *See* R. Doc. 145-3.

[9] 2/8/19-(3.8hrs), 2/11/19-(2.3hrs), and 2/12/19-(2hrs). *See* R. Doc. 145-3.

[10] 3/13/19 (6.3hrs.) See R.Doc. 145-7

*iii.  Travel Entries*

As to compensation for Slotnick's travel time, the Court notes that attorney travel time is typically compensated at 50% of the reasonable hourly rate. *See*, *e.g.*, *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir.1993); and *Tasch, Inc. V. Unified Staffing & Associates, Inc.*, No. 02–3531, 2003 WL 23109790, at *6 (Roby, K.) (E.D.La. Dec.30, 2003) (citing *Watkins*). In this instance, a reduction of $187.50 per hour would apply to Slotnick's travel time. Slotnick indicates that his total travel time was ten hours to attend depositions in Seattle. As a result, the amount of reasonable fees associated with his travel is $187.50 x 10 hours for a total of $1,875.00.

| **Billing Attorney** | **Rate** | **Reasonable Hours** | **Reasonable Fee** |
|---|---|---|---|
| Mary Ellen Roy | $355.00 | 176.30[11] | $62,586.50 |
| Barry Slotnick | $375.00 | 11.72[12] | $4,395.00 |
| *Travel rate* | $187.50 | 10.00 | $1,875.00 |
| Dan Zimmerman | $276.66 | 163.55[13] | $45,247.75 |
| Ashley Heilprin | $245.00 | 31.27[14] | $7,661.15 |
| **Total** | | 392.84 | **$121,765.40** |

---

[11] This number was determined by subtracting the block bill fees time-reduction (30.65 hours) from the total hours billed by Roy (209.9) and then subtracting an additional 0.2 hours for her duplicate time-entry, which equals a net of 176.30 reasonable hours.

[12] This number is calculated by subtracting Mr. Slotnick's ten (10) travel hours from his total 23.3 hours sought (13.30) and then subtracting the block bill fees time-reduction (1.58 hours) from the hours billed, which equals a net of 11.72 reasonable hours.

[13] This number was determined by subtracting the blocked bill fees time-reduction (19.15 hours) from the total hours billed by Zimmerman (182.7), which equals a net of 163.55 reasonable hours.

[14] This number was determined by subtracting the blocked bill fees time-reduction (2.03 hours) from the total hours billed by Heilprin (33.30), which equals a net of 31.27 reasonable hours.

### 3. *Johnson Factors*

As indicated above, after the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson*, 488 F.2d at 717-19. To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998). The Court, considering the *Johnson* factors, finds the amount awarded is sufficient and not requiring a downward departure.

Pursuant to the documentation provided by both Loeb & Loeb LLP and Phelps Dunbar LLP, the Court finds Defendants' total reasonable attorneys' fees equals **$121,765.40**.

### C. Costs

Defendant-movers also seek the award of costs in the amount of $3,764.26; they do not, however, provide a statutory basis for their request. Nevertheless, Defendants did attach evidence of costs incurred in connection with this matter. *See*, *e.g.*, R. Docs. 145-4 & 145-8.

The Copyright Act grants courts the discretion to award costs to the prevailing party in a copyright infringement action. 17 U.S.C. § 505. In determining whether an award of costs and attorneys' fees is warranted, courts may consider whether (1) a complex or novel issue of law justified the litigation of the case, (2) the defendants attempted to avoid the infringement, and (3) the act of infringement was innocent. *Boz Scaggs Music v. KND Corporation*, 491 F.Supp. 908, (U.S. D. Conn. 1980). In this case, there was no issue that justified the litigation of the case. Defendants attempted to avoid the litigation early in the case that Plaintiff rebuffed. There was no act of infringement by Defendants. Having met two of the three requirements, the Court finds that the award of costs is appropriate.

Defendants seek reimbursement for the filing of the Motion *Pro Hac Vice* for Erin Smith Dennis, Barry Slotnick, and Christian D. Carbone at a cost of $100.00 each. R. Doc. 145-4 p. 3, 5, & 7. The receipts for these expenses were attached showing that the fee was paid by credit card for a total of $300.00. R. Doc. 145-4. Defendants also seek reimbursement for hearing transcripts totaling $242.50. While Defendants attached an appropriate receipt for the 1/23/2019 Hearing transcript in the amount of $140.65 (R. Doc. 145-4, p. 10), the documentation provided for the payment of the 1/3/2018 Hearing transcript in the amount of $291.00 is not sufficient (R. Doc. 145-4, p. 9).[15] As such, the Court will reduce the costs requested by Loeb & Loeb LLP by $291.00.

Co-counsel Phelps Dunbar LLP attached an invoice from CDS—Complete Discovery Source for blowbacks or native files totaling $223.31. R. Doc. 148-8, p. 6. Central Court Reporting invoice totaling $690.00 for two-day expedited delivery of Ben Haggerty, Ryan Lewis, Zach Quillen and Grady Chapman's depositions. R. Doc. 145-8, p. 5. Johns Pendleton Fairbanks & Freese also submitted an invoice for the testimony or deposition of Archie Milton and Paul Batiste totaling $1,157.10 and $1,151.35 respectively. *Id.* at p. 3 & 4. The Court finds all documents provided by Phelps Dunbar LLP sufficient.

Pursuant to the documentation provided by both Loeb & Loeb LLP and Phelps Dunbar LLP, the Court finds Defendants' total reasonable costs equals **$3,662.41**.

### D. Additional Attorneys' Fees for Attorneys Fee Motion

Defendants also seek an additional award from $5,000.00 to $10,000.00. They, however, fail to include any record time for the attorneys' work associated with the subject motion. The Court

---

15 The Court, here, notes the discrepancy in information provided and Defendants' calculation. Based on the documentation provided to the Court (particularly Hearing transcript requests), Defendants' Loeb & Loeb LLP's request request should have reflected a total of $731.65 and not $542.50.

16

further notes that the few paralegal entries associated with preparing the subject motion is already included in the fee award. As such, Defendants' requested $5,000.00 to $10,000.00 is disallowed for failure to provide adequate documentation to support the request.

## IV.     CONCLUSION

**Accordingly**,

**IT IS RECOMMENDED** that the Defendants' **Motion for Attorney's Fees (R. Doc. 145)** be **GRANTED** to the extent that Defendants are awarded reasonable attorneys' fees and costs in the amount of **$125,427.81.**

**IT IS FURTHER RECOMMENDED** that Plaintiff Paul Batiste and his counsel shall be ordered to satisfy their obligation to the Defendants **no later than twenty-one (21) days** after the signing of the order adopting this Report and Recommendation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[16]

New Orleans, Louisiana, this 6th day of September 2019.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[16]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.